# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MOBILE PIXELS, INC., | ) | Case No. |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| THE PARTNERSHIPS AND | ) | |
| UNINCORPORATED ASSOCIATIONS | ) | |
| IDENTIFIED ON SCHEDULE "A", | ) | **DEMAND FOR JURY TRIAL** |
| | ) | |
| Defendants. | ) | |

# DECLARATION OF XIAOLIANG YAO

I, Xiaoliang Yao, declare and state as follows:

1. This declaration is based upon my personal knowledge of the facts stated herein or on the business records that were made at the time or in the regular course of business. If called as a witness, I could and would testify to the statements made herein.

2. I am a co-founder and am the CEO of Mobile Pixels, Inc. ("Mobile Pixels" or "Plaintiff"). I am knowledgeable of or have access to business records concerning all information referenced herein, including but not limited to Mobile Pixels' design patents, utility patents, trademarks, copyrights, other intellectual property, sales, on-line sales, advertising, marketing, media coverage and intellectual property enforcement activities. I make this declaration from matters within my knowledge unless otherwise stated.

3. Plaintiff Mobile Pixels , Inc. is a is a California corporation with its principal place of business at 8 Cedar Street, Suite 62, Woburn MA 01801.

4. I founded Mobile Pixels in 2016 with Wenglong Ng to develop and market auxiliary monitors for computers. In particular, we sought to create at least one monitor that could be attached to the back of a laptop monitor and be deployable between a stowed position behind the screen and a display position extending from one or both sides of the laptop monitor, allowing laptop users to experience the convenience of multiple screens without requiring the laptop to be docked to a desktop docking station with additional stand-alone monitors.

5. On May 17, 2018, Mr. Ng and I filed a design patent application, United States Serial Number 29/647,976, on one of our auxiliary monitor design inventions. This application issued as U.S. Patent No. D920,975 (the "'975 Patent") on May 12, 2021.

6. Mobile Pixels is the lawful assignee of all right, title and interest in and to the '975 Patent, with full rights to enforce the '975 Patent and sue and recover for past, present, and future infringement. A true and correct copy of the '975 Patent was attached to the Complaint in this case as Exhibit 2.

7. Since at least about July 2018, Mobile Pixels has marketed, advertised, promoted, distributed and sold Mobile Pixels' auxiliary monitors to consumers in the United States. Mobile Pixels auxiliary monitors have been extremely successful, driven by Mobile Pixels' unique and innovative designs and high quality standards. As a result, genuine Mobile Pixels products have come to symbolize high quality.

8. Mobile Pixels products are distributed and sold online to consumers through both on-line and brick-and-mortar retailers throughout the United States, including through authorized retailers in Massachusetts, including Best Buy, Office Depot, Lenovo, Target, Barnes & Noble, Staples, MicroCenter, Walmart, BrandsMart, B&H Photo, Electronic Express, Abt

Electronics, Follett, BJ's, Insight, and NewEgg, as well as through the official "mobilepixels.us" website and through Mobile Pixels' official Amazon e-commerce sites.

9. Mobile Pixels products are known for their distinctive patented designs, which are broadly recognized by consumers. Auxiliary monitors stylized after these designs are associated with the quality and innovation that the public has come to expect from Mobile Pixels. Mobile Pixels uses these designs in connection with its auxiliary monitor products, including the designs of the '975 Patent (hereinafter, the "Mobile Pixels Design").

10. I perform, supervise, instruct and/or direct investigations related to internet-based infringement for Mobile Pixels, including investigations related to the infringement of the Mobile Pixels Design. Our investigation shows that Defendants are making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use auxiliary monitor products that infringe the Mobile Pixels Design (the "Infringing Products"). I, or someone working under my direction, analyzed each of the e-commerce stores[1] operating under the seller aliases identified in Schedule A to the Complaint (the "Seller Aliases") and determined that Infringing Products were being offered for sale to residents of the United States, including Massachusetts residents. This conclusion was reached through visual inspection of the products listed for sale and depicted on each e-commerce store, the price at which the Infringing Products were offered for sale, other features commonly associated with e-commerce stores selling infringing products, and because Mobile Pixels had not granted a license or any other form of permission to Defendants with respect to the Mobile Pixels Design. In addition, each e-commerce store

---

[1] The e-commerce store url's are listed on Schedule A to the Complaint under the Online Marketplaces.

offered shipping to the United States, including Massachusetts. True and correct copies of screenshot printouts showing the active e-commerce stores operating under the Seller Aliases reviewed were attached as Exhibit 1 to the Complaint.

11. Defendants have targeted sales to Massachusetts residents by setting up and/or operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Massachusetts, accept payment in U.S. Dollars and, on information and belief, have sold Infringing Products to residents of Massachusetts.

12. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized on-line retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Mobile Pixels has not licensed or authorized Defendants to use the Mobile Pixels Design, and none of the Defendants are authorized retailers of genuine Mobile Pixels Products.

13. E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their e-commerce operation.

14. E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation, and to avoid being shut down.

15. Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use. E-commerce stores operating under the Seller Aliases include other notable features, such as the use of the same registration patterns, accepted payment methods, check-out methods, keywords, advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same texts and images. Additionally, Infringing Products for sale by the Seller Aliases bear similar irregularities and indicia of being unauthorized to one another, suggesting that the Infringing Products were manufactured by and come from a common source and Defendants are interrelated.

16. E-commerce store operators like Defendants are in constant communication with each other through websites such as sellerdefense.cn and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

17. Infringers such as Defendants typically operate under multiple seller aliases and payment accounts so that they can continue operation in spite of Mobile Pixels' enforcement. E-commerce store operators like Defendants maintain off-shore bank accounts and

regularly move funds from their financial accounts to off-shore accounts outside the jurisdiction of this Court to avoid payment of any monetary judgments awarded to Mobile Pixels. Analysis of financial account transaction logs from previous similar cases indicates that off-shore infringers regularly move funds from U.S-based financial accounts to off-shore accounts outside the jurisdiction of this Court.

18. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Infringing Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Mobile Pixels, have jointly and severally, knowingly and willfully offered for sale, sold and/or imported into the United States for subsequent resale or use the same product that infringes directly and/or indirectly the Mobile Pixels design. Each e-commerce store operating under the Seller Aliases offers shipping to the United States, including Massachusetts, and, on information and belief, each Defendant has sold Infringing Products into the United States and Massachusetts over the Internet.

19. Monetary damages cannot adequately compensate Mobile Pixels for ongoing infringement because monetary damages fail to address the damage to Mobile Pixels' control over its rights in the Mobile Pixels Design, its reputation, associated goodwill, and ability to exploit the Mobile Pixels Design. Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Mobile Pixels' control over its right to exploit the Mobile Pixels Design, its reputation, associated goodwill, and ability to exploit the Mobile Pixels Design by acts of infringement.

20. Mobile Pixels' goodwill and reputation are irreparably damages by the making, using, offering for sale, selling, or importing of goods that infringe the Mobile Pixels Design. Moreover, brand confidence is damaged, which can result in a loss of future sales and market share. The extent of harm to Mobile Pixels' reputation and goodwill and the possible diversion of customers due to loss in brand confidence are largely unquantifiable.

21. Mobile Pixels is further irreparably harmed by the unauthorized making, using, offering for sale, selling, and/or importing of goods that infringe the Mobile Pixels Design because infringers take away Mobile Pixels' ability to control the nature and quality of the Infringing Products. Loss of quality control over goods made, used, offered for sale, sold, or imported featuring the Mobile Pixels Design and, in turn, loss of control over Mobile Pixels reputation is neither calculable nor precisely compensable.

22. The making, using, offering for sale, selling, or importing of goods featuring the Mobile Pixels Design that are not authorized, produced, or manufactured by Mobile Pixels is likely causing and will continue to cause consumer confusion, which weakens Mobile Pixels' brand recognition and reputation. Inferior quality products will result in increased skepticism and hesitance in consumers presented with genuine Mobile Pixels Products, resulting in a loss or undermining of Mobile Pixels' reputation and goodwill.

23. Mobile Pixels is further irreparably damaged due to a loss of exclusivity in its patented design. Mobile Pixels Products are meant to be exclusive. Mobile Pixels' extensive marketing efforts and innovative designs are aimed at growing and sustaining sales. When infringers make, use, offer for sale, sell, or import goods featuring the Mobile Pixels Design without Mobile Pixels' authorization, the exclusivity of Mobile Pixels

Products, as well as Mobile Pixels' reputation, is damaged and eroded, resulting in a loss of unquantifiable future sales.

24. Mobile Pixels will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this  8 th day of November 2023,

_____