UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MOBILE PIXELS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A", <br><br> Defendants. | Civil Action No.:  1:23 CV 12587- ADB |

**DEFENDANTS' OPPOSITION TO MOTION TO DISMISS**[1]

---

[1]      Shenzhenshi Haogainian Dianzikeji Youxiangongsi (d/b/a "**YUTOO**"), shenzhenshiyidaishumakeji Co.ltd-huang yuan qiong  (d/b/a "**LY.gainianUS1**"), Shenzhen City Free Vast Science and Technology Co., Ltd (d/b/a **Maxfree**); Shenzhen Laibo Technology Co, Ltd (d/b/a **LAlBO US**); Dongguan Guangliying Electronic Technology Co, Ltd. (d/b/a **KEFEYA US OFFICIAL**); Triple A International Trading Inc. (d/b/a **US-Alecewey**); Rongbang Enterprise USA INC (d/b/a **BOAA US store**); R&T BROTHERS LLC (d/b/a **CopGain Store-us**); FUCANG ENTERPRISES USA INC (d/b/a **ppL Technology Supply**); Shenzhen Mingsirui Technology Co, Ltd. (d/b/a **SMISEACOW US**); LIVING SKYLIGHT Inc. (d/b/a **WallyDeals**); Shenzhen SHANGJIAMEIPIN E-Commerce Co, Ltd. (d/b/a **Kwumsy**); RIZTECHNOLOGY LLC (d/b/a **JJTechGiant**); Bohua HUAGAOLI Electronic Technology Co, Ltd. (d/b/a **VargaoliDeal**); Shenzhen Pengling Intelligent Technology Co., Ltd. (d/b/a **FICIHP**); Shenzhen Lianshengtuo Technology Co., Ltd. (d/b/a **ALLVIA**); Shenzhen Weidong Zhi Xin Technology Co, Ltd. (d/b/a **WESTHOD US**); Qingyuanshi Maigi Intelligent Technology Co., Ltd. (d/b/a **APILDELLA**); Shenzhen Jiashi Technology Co., Ltd. (d/b/a **gyflp**); Shenzhen Donghongze Trading Co., Ltd. (d/b/a **CIDETTY Electronics**); Shenzhen Jiacaili Technology Co, Ltd. (d/b/a **KasoreyUs**); Shenzhen Keangsi Trade Co. ltd. (d/b/a **AetherSpark**); and Shenzhen Huibaijia Technology Co, Ltd. (d/b/a **Venraty**)

Defendants (Collectively "Defendants" or "Competitor Plaintiffs"), oppose Combined Motion to Dismiss and Strike filed by Mobile Pixels, Inc.'s ("Plaintiff" or "Mobile" or "Counterclaim Defendant"). Dkt. 92.

## **INTRODUCTION**

Mobile Pixels, Inc. is a sophisticated consumer electronics company that sells laptop extenders through Amazon Marketplace and other online platforms. In a strategic effort to increase its sales, Mobile targeted virtually all of its online competitors including the Competitor Plaintiffs, falsely reported infringement claims with the specific intent of causing Amazon to immediately freeze of all of its competitors' accounts (severely restricting their ability to continue to operate) and delist all of its competition.[2] With an artificial monopoly created by its false reporting, Mobile secured a direct, immediate and unjust financial benefit in the form of increase sales of its product. In response, the Competitor Plaintiffs filed a counterclaim against Mobile seeking to recover their damages based upon the falsely reported infringement. In particular, the Competitor Plaintiffs asserted claims for Tortious Interference with Contractual and Advantageous Business Relationship, Commercial Disparagement (collectively "Common Law Claims"), Unjust Enrichment ("Equitable Claim"), and for violation of 93A and 15 USC § 2 ("Statutory Claims").

This entire case, and particularly the *ex parte* TRO application, was initiated by Mobile based on a series of material omissions and misrepresentations. First and foremost, Mobile and its attorney were fully aware that they should not sue different defendants selling completely different products using only one design patent in one case, but they did so anyway. Then, it

---

[2]     Mobile filed this mass-defendant complaint (including approximately 73 of its competitors) in what is commonly referred to as "Schedule A Defendants Scheme." See Goldman, Eric, A Sad Scheme of Abusive Intellectual Property Litigation, 123 Columbia Law Review Forum 183 (November 20, 2023),

asked for the order to be entered *ex parte* based on the assertion that Defendants in these types of cases "typically" or "often" "conceal their identities" by using fictitious names and addresses to register and operate their extensive network of Defendant Internet Stores (Doc. 11 at 10-17), which is clearly false because Mobile knew about the identity of Defendants long before this case was filed. Mobile's representative in China was able to accurately locate Defendants' contact information and make settlement demand, in exchange for Mobile to notify Amazon to release the restrain on Defendants' store.

Mobile asserted that it is likely to succeed on the merits because in less than one page, Mr. Yao, Mobile's owner, "perform[s], supervise[s], instruct[s], and/or direct[s] investigations related to internet-based infringement for Mobile Pixels," and then Mr. Yao "determined that Infringing Products were being offered for sale." This conclusion was reached through visual inspection of the products listed for sale and depicted on each e-commerce store. Mobile did not even bother to actually purchase any products from the Defendants' store. Vague references to what other defendants might "typically" or "often" do are not an adequate basis for stating a claim against these Defendants—much less for the extraordinary remedy sought by Mobile here.

Moreover, as stated in Defendants' Counterclaim (Dkt. 83, Dkt. 84), the Complaint submitted by Mobile's Counsel, and the Declaration submitted by Mr. Yao are verbatim plagiarism of the Complaint and declaration submitted in several cases in the Northern District of Illinois by Oakley Inc. The Mobile and its attorney's refusal to draft an original Complaint and declaration to support its case with specific facts and reasons pertinent to it raises significant concerns. The lack of a tailored, fact-specific Complaint and declaration from the Mobile undermines the credibility and validity of the request for such a substantial legal action. This practice alone is sanctionable.

**LEGAL STANDARD**

To survive a motion to dismiss, a plaintiff must "state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ocasio-Hernandez  v.  Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).

If the allegations of the counterclaims, under any theory, are "sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss." *Vartanian v. Monsanto Co.*,  14 F.3d 697, 700 (1st Cir.1994).

**ARGUMENT**

1.      **Count II: Invalidity of the D920,975 Patent**

A distinction between the pleading standard for non-infringement and the pleading standard for invalidity reflects the heavy burden of persuasion the party seeking a declaration of invalidity bears. *Budde  v.  Harley–Davidson,  Inc*., 250  F.3d  1369,  1376 (Fed.Cir.2001) (noting that a party seeking a declaration of invalidity must prove same by clear and convincing evidence). While Defendants agree that when plead invalidity of a patent, more factual support should be alleged, *Senju Pharm. v. Apotex*, No. 12−159−SLR, 2013 WL 444928, at *4 (D.Del. Feb.6, 2013) (dismissing for complete lack of factual support an invalidity counterclaim), yet Defendants did not agree that  Defendants' pleading of invalidity state in their entirety only includes one sentence, "The claims of the '975 Patent are invalid for failure to

comply with the statutory requirements of one or more provisions in Title 35 of United States Code, including without limitation §§ 101,102,103, and/or 112."

Defendants are willing to withdraw claims of invalidity under Rule 101 and Rule 112 pending the completion of discovery. However, Defendants remain confident that further investigation may reveal grounds for invalidation of Mobile's Asserted Patent, particularly regarding the drawing being indefinite. Therefore, Defendants intend to amend the Complaint accordingly at the appropriate juncture. With regard to invalidating Mobile's Asserted Patent under Rule 102 and 103, it is evident from the docket that Defendants extensively argued these points in their motion to vacate the Temporary Restraining Order (Dkt. 39).

**Invalidity under Rule 102**

In patent cases, "[a] person shall be entitled to a patent unless ... the claimed invention was ... on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1) (emphasis added). This is referred to as the "on-sale bar" provision, which defines a type of "prior art." *Helsinn Healthcare S.A. v. Teva Pharms. USA, Inc.*, ⸺ U.S. ⸺, 139 S. Ct. 628, 631–32, 202 L.Ed.2d 551 (2019). Prior art under the on-sale bar can support a determination that a patent claim is invalid as anticipated or obvious. *Id*.

Defendants have shown a 2015 product called "slidenjoy" which was nealy identically realzied the four positions/configurations of the Mobile's Asserted Patent. From the following comparison, it is clear that the patent and slidenjoy are the same or substantially the same, with any other differences being trivial, leading an ordinary observer to confuse the two. Therefore, the patent is anticipated by slidenjoy and, as a result, is unpatentable under 35 U.S.C. § 102(a)(1).

| | **Assered design** | **slidenjoy** |
|---|---|---|
| **position 1** |  FIG. 4 |  |
| **position 2** |  FIG. 11 |  |
| **position 3** |  FIG. 20 |  |
| **position 4** |  FIG. 28 |  |



| Sideview | | |
| --- | --- | --- |

FIG. 13

**Invalidity under Rule 103**

Obviousness is a question of law based on underlying facts. *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1358 (Fed. Cir. 2017). The obviousness inquiry requires consideration of the four Graham factors: (1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the art; and (4) objective indicia of nonobviousness, such as commercial success, long felt but unsolved needs, and failure of others. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966). Defendants relied on two pieces of prior art to invalidate Mobile's asserted Patent.

U.S. Design Patent D761,800 (Muller)        Filed: 4/10/2014        Issued: 7/19/2016



U.S. Patent 7,848,091 (Han et al.)        Filed: 3/16/2007        Issued: 12/7/2010



Combining the monitor of *Hans et al*. with the *Muller* monitor would result in a hypothetical reference having an overall appearance "basically the same" as the claimed design of the '975 patent, when assessed from the view point of an ordinary observer. Thus, the claim of the '975 patent is obvious over the monitor of Muller in view of the monitor of *Hans et al.*

Due to the thorough argument presented by the Defendants regarding invalidation based

on Rule 102 and Rule 103, Count II should not be dismissed, particularly concerning Rule 102 and Rule 103.

2.    **Count III & IV: Tortious Interference with a Contract/Advantageous Business Relations**

In Massachusetts, a claim of tortious interference with contractual relationships requires that the counterclaimant establish (1) a contract existed between the counterclaimant and a third party, (2) the defendant knowingly induced the third party to break the contract, (3) the defendant's interference, in addition to being intentional, was improper in motive or means, and (4) the counterclaimant was harmed by the defendant's actions. *Putluri v. FSSI Acquisition, Inc.*, 637 F. Supp. 3d 1, 4 (D. Mass. 2022).

According to Massachusetts law, a claim for tortious interference with advantageous business relationships requires four elements: (1) the plaintiff was involved in a business relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result. Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.,  62 Mass.App.Ct. 34, 815 N.E.2d 241 (2004)(citing United Truck Leasing Corp. v. Geltman,  406 Mass. 811, 812, 815–17, 551 N.E.2d 20 (1990)).

Mobile's only argument as to interference with a Contract is that Defendants failed to allege that Amazon break its contract with the Defendants. Mobile's only argument as to interference with advantageous business relations is that Defendants failed to allege that the relationship between Amazon and the Defendants was interfered.

> "Defendants have not and cannot plead that Amazon did anything other than what it was permitted to do under its agreement with the Defendants. As the business relationship (e.g., the contract) between Amazon and the Defendants was never broken, count IV must be dismissed" Dkt. No. 92, at 8.

Mobile's arguments regarding both Interference with Contract and Interference with advantageous are both unfounded. Mobile's submission of a false report to Amazon with the intent of inducing a breach and interfering the Defendants' relationship is sufficient to sustain a claim for tortious interference. The tort of interference with contractual or advantageous business relationship is intended to **protect existing contractual and business relationships from interference through threats, misrepresentations or defamation**. *See Chemawa County Golf Inc. v. Wnuk*, 9 Mass App. 506, 509 (1980) ("In its classic form the tort of interference with contractual relations involves the undoing of a business arrangement bound by contract."). Claims for intentional interference with contractual or advantageous relations require a showing that the defendant knowingly and for an improper purpose or by improper means induced a party to breach a contract or not to enter into or continue a business relationship resulting in damages. *Buster v. George W. Moore, Inc.*, 438 Mass. 635, 654 (2003); *see also Swanset Development Corp. v. City of Taunton*, 423 Mass. 390, 397 (1996); *see also Cavicchi v. Koski*, 67 Mass.App.Ct. 654, 657 (2006) (recognizing that the claims for interference with contractual relationships and advantageous business relationships are "substantially similar."). **Plaintiff need not claim actual breach to sustain a contractual interference claim but may allege the "rendering of performance" under the contract "impossible**. Restatement  (2D) of Torts §766 ; *Shafir v. Steele*, 431 Mass. 365, 369 (2000) ("One who intentionally and improperly interference with the performance of a contract between another and a third person by preventing the other from performing the contract or **causing the performance to be more expensive or burdensome** is subject to liability to the other for pecuniary loss resulting to him.")

Here, the Counterclaim alleges Mobile's coordinated effort to preclude the Defendants from receiving any benefit from their contractual and business relationship with Amazon through

fraud and deceit. *See Nostrame v Santiago*, 61 A3d 893, 902 (2013) ("[t]here can be no doubt that inducing another to end a contractual relationship through acts that amount to fraud or defamation would be wrongful" and that "deceit and misrepresentation can constitute wrongful means."); Specifically, Mobile is alleged to have falsely submitted complaints of infringement to Amazon knowing that these complaints would result in direct interference with its relationship with Amazon, causing a freezing of the account and a suspension of the use of the platform. *See Hotaling & Co v. LY Berditchev Corp.*, Civil Action No. 20-cv-16366, 2022 WL 1134851 (D.N.J. April 18, 2022) (confirming the virtually identical conduct of submitting false reports to Amazon was sufficient to sustain a claim of tortious interference); *Alphacard Systems LLC v. Ferry LLC*, Civil Action No. 19-20110 2021 WL 21900901 (D. NJ   May 31, 2021) (confirming that disparaging statements of products on Amazon was sufficient to sustain a claim for interference with existing contractual relations).

Nor can Mobile avoid liability for its wrongful conduct by claiming that Defendants failed to allege a breach of the contract with Amazon. This is because the Massachusetts Supreme Judicial Court has recognized that the "rendering of performance" under the contract "impossible" preventing performance under the contract or causing performance to be more burdensome or expensive" is sufficient to establish liability. *Shafir, supra* at 369. Restatement (2D) of Torts §766A (1979);  *see Hersh v Cohen*, 16 NYS 3d 606, 609-610 (2d Dept 2015) (confirming that a complaint sufficiently alleged a cause of action for tortious interference with contract because it alleged defendants intentional interference rendered contract performance impossible); *see Casco Marina Development LLC v District of Columbia Redevelopment Land Agency*, 834 A.2d 77, 83, 84 (2003) (a "**breach as such is not required but merely a failure of performance**…")

As alleged by Defendants in their counterclaims, and their Motion to Vacate, Mobile was aware that Defendants were selling competing products on Amazon, and that Amazon has a policy of delisting sellers for claims of intellectual property infringement without conducting investigations. Countercl., §10. To exploit Amazon's IP protection system, Mobile and its attorneys, without conducting any type of investigation, filed a Complaint containing non-specific, formulaic allegations, which were virtually copied from cases in the Northern District of Illinois where Oakley, Inc. was the Plaintiff. *Id*. footnote 3;  §§ 14-15.

Furthermore, Mobile's experienced IP attorney knew that bringing design patent infringement lawsuits against multiple Defendants selling different designed products, using only one design patent, does not comply with the requirements under FRCP 20 and 21. *Id*. footnote 3. Yet Mobile proceeded with this approach nonetheless. Additionally, Mobile waited 17 days after filing the complaint to file their motion for TRO, ensuring the removal of Defendants' more than 83 selling ASINs right before the Thanksgiving shopping spree. Dkt. No. 39, at 40. There is nothing in the record to indicate that when Mobile filed this case, later seeking injunctive relief, it demonstrated a proper motive or lacked malice.

For the tortious interference with a contract claim, Defendants alleged in their counterclaim that Defendants and Amazon had a valid and existing contract to sell their products through Amazon.com. Countercl., ¶ 35. However, Amazon breached that contract by delisting Defendants' ASINs and freezing Defendants' financial account due to a TRO, which was obtained by Mobile using serious misrepresentations. The TRO issued by this Court was utilized by the Mobile as a tool to "induce a third party, Amazon, to break the contract" it had with the Defendants—a contract that Mobile should have been aware of, as Mobile itself is an Amazon seller.

For the tortious interference with advantageous business relations claim, Defendants alleged in their counterclaim that Amazon and the Defendants had a valid and existing contract to sell Defendants' products through Amazon.com. Mobile knew about the ongoing relationships and prospective future business arrangements between Defendants and Amazon. Mobile caused the relationship to break using improper means and motive, in this case, through a TRO secured through misinterpretation and with the motive to gain monopoly power, Countercl., ¶ 9. Defendants suffered significant harm due to unable to sell their products on Amazon. *Id.* ¶ 46.

Viewed in their totality, the facts alleged here state a plausible claim that Mobile not only tortiously interfered with the contract between Defendants and Amazon, but also tortiously interfered with the advantageous business relations between Defendants and Amazon. Defendants' two tortious interference claims should not be dismissed.

**3.      Count V: Trade Libel and Injurious Falsehood**

Commercial disparagement goes by many names, including injurious falsehood, slander of goods, and trade libel. *First Act Inc. v. Brook Mays Music Co., Inc.*, 429 F.Supp.2d 429, 432 n. 1 (D.Mass.2006) (Harrington, J.). A lawsuit based on commercial disparagement "seek[s] to impose liability on a defendant for harm sustained by a plaintiff as a result of the publication of a false statement about the plaintiff." *HipSaver, Inc. v. Kiel,* 464 *Mass.* 517, 522, 984 N.E.2d 755 (2013). The scope of liability is defined as:

> One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

*Dulgarian v. Stone*, 420 Mass. 843, 852, 652 N.E.2d 603 (1995) (quoting Restatement (Second) of Torts § 623A (1977)) (internal quotation marks omitted). It is black-letter law in

Massachusetts that a plaintiff pursuing a commercial disparagement claim bears the burden of proving that:

> [The] defendant (1) published a false statement to a person other than the plaintiff; (2) "of and concerning" the plaintiff's products or services; (3) with knowledge of the statement's falsity or with reckless disregard of its truth or falsity; (4) where pecuniary harm to the plaintiff's interests was intended or foreseeable; and (5) such publication resulted in special damages in the form of pecuniary loss.

*HipSaver*,  464 Mass. at 523, 984 N.E.2d 755.

In Mobile's motion, Mobile stated that "[Defendants] have not identified any specific parties to whom any statements were allegedly made and identify no statements, written or oral, in even a general fashion that would enable [Mobile] to evaluate whether the statements were false and/or would potentially harm Defendants." Pl.['s] Mot. to Dismiss, at 10. But Mobile's statement is false.

Mobile as a Amazon seller itself, knew Mobile's practice will cause the Defendants ASINs being delisted for any claim of intellectual property infringement and such delisting will cause the sellers immediate financial harm, direct loss of revenue, profit and existing case held on account with Amaon, and eliminate competitions from Amazon. Countercl. ¶10. Mobile still chose to knowingly publish a falsely secured TRO to Amazon (party other than Defendants), alleging Defendants' different designed product infringed Mobile's only Design Patent. *Id*. ¶¶ 11-21. Due to Mobile's published false statement to Amazon, Defendants' selling ASINs were delisted and the accounts containing virtually all of their operating funds were frozen. *Id*. ¶22. Defendants have and will continue to suffer substantial losses, including, but not limited to, damaegs to its business, to its repuation, and to the goodwill that Defendants have established in their products. *Id*. ¶ 57.

Defendants have sufficiently pled sufficient actual factual allegations to state a claim for

Commercial disparagement. Defendants' Count V should not be dismissed.

**4.      Count VI: Unjust Enrichment**

Under Massachusetts law, a plaintiff may recover for unjust enrichment upon a showing

that 1) plaintiff conferred a benefit upon the defendant, 2) the defendant accepted that benefit and

3) the defendant's retention of the benefit would be inequitable without payment for its value.

*Malaro v. Roger Wilkie, Jr., Builder, Inc.*, No. CV 22-10548-NMG, 2023 WL 3572355, at *2 (D.

Mass. May 19, 2023).

In Mobile's motion to dismiss, Mobile argued that Defendants failed to make allegations

that Defendants conferred any benefit upon Mobile, as Mobile's benefit came from either this

Court or Amazon. That statement is misleading. Defendants' alleged in their counterclaim that

Mobile"filed a baseless request for a TRO with the specific intent of eliminating its competition."

Countercl. ¶1. With the TRO, **Mobile received an immediate benefit in the form of the**

**elimination of virtually all of its competition** and then attempted to extract money from each of

its competition. *Id*. The Court and Amazon are merely tools used by the Mobile to force the

Defendants to "confer" the revenue from at least 83 ASINs that rightfully belonged to the

Defendants during the delisting period. A comparison of the Mobile's sales records in November

2023 with the sales figures from previous years would reveal the unreasonable increase in the

Mobile's sales. It is unjust for the Mobile to retain this portion of growth, as it rightfully belongs

to the Defendant.

Since the Defendants have alleged that the Defendants' anticipated earnings on Amazon

during the delisting period "conferred" to Mobile, this claim should not be dismissed.

**5.      Count VII: M.G.L. c.93A**

As cited by the Mobile, The Supreme Court has provided a two-prong test to determine

whether a case is a "mere sham." The first prong is that the party alleging sham litigation must show that the litigation (1) is objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If and only if the first prong is met, then the court may continue to the second prong where the court must determine (2) whether a lawsuit is an attempt to directly interfere with the business relationships of a competitor through the use of—as opposed to the outcome of—governmental process as an anticompetitive weapon. *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 60-61 (1993)

Mobile's actions in this case undoubtedly meet both prongs. No reasonable litigant could expect success on this patent infringement claim. Mobile did not explain why Mobile who is represented by experience lawyers, decided to sue multiple defendants selling different designed products in one case, (Dkt. No. 84, at 8, footnote 2) and why when suing Defendants for patent infringement, Mobile did not even purchase the accused products from the Defendants, just accused Defendants for infringement based on **visual inspection**. Dkt. No. 11, Yao Decl. §10. Not to mention the fact that the Mobile's attorney was even too lazy to draft a complaint himself; instead, he just copied a complaint from another case word-for-word. Countercl. ¶14. Dkt. No. 83-2.

And apparently, Mobile intentionally avoided discussing how Mobile secured the TRO. Because when discussing the TRO, Mobile has to explain to the Court, why the declaration, the only evidence used to support its TRO application from Mr. Yao, was a verbatim copy of the Illinois case. Countercl. ¶15. It is clear that Mobile used the Federal Court, to be specific, the power bestowed to the Federal Judge, as an anti-competitive weapon to interfere with the business relationships between the Defendants and Amazon.

Mobile's action does not enjoy immunity from allegations of unfair competition under

*Noerr-Pennington Doctrine*, and its action has "attained a level of rascality that would raise an eyebrow to the rough and tumble of the world of commerce." *Branch Ave Capital LLC v. US Bank Nat. Ass'n*, 2013 WL 5242121, at *7, 12-40140-TSH (D. Mass. Sep. 16, 2023).

Defendants' VII claim should not be dismissed.

6.    **Count VIII: Attempted Monopolization**

The elements of attempted monopolization are (1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent o monopolize and (3) a dangerous probability of achieving monopoly power.'" *Díaz Aviation Corp. v. Airport Aviation Servs., Inc.*, 716 F.3d 256, 265 (1st Cir. 2013)

In their counterclaims, Defendants alleged that Mobile has engaged in anti-competitive conduct by using TRO to delist Defendants' selling ASINs. Countercl., ¶ 1. Mobile did that with the intention to "receive an immediate benefit in the form of the elimination of virtually all of its competition and then attempted to extract money from each of its competitions." *Id.*

Mobile further argued that Defendant failed to allege facts that would lead to a claim that Mobile would have "market power" by saying that Defendants did not address selling activity on other marketplace. However the TRO proposed by Mobile and entered by the Court stated that:

"1.Defendants, their officers, agents, servants, employees, attorneys, and all persons acting for, with, by, through, under or in active concert with them be temporarily **enjoined and restrained from:**

a.**Offering for sale, selling, and/or importing** any products not authorized by Mobile Pixels and that include any reproduction, copy, or colorable imitation of the design claimed in the Mobile Pixels Design;

4. Including, without limitation, **any online marketplace platforms** such as Amazon.com (collectively, "Third Party Providers")

5. Upon Mobile Pixels' request, those with notice of this Order, including Third Party Providers as defined in Paragraph 4, shall within seven (7) calendar days after receipt of such notice, **disable and cease displaying any advertisements used by or associated with Defendants** in connection with the sale of infringing goods using the Mobile Pixels Design."

6. Any Third Party Providers, including without limitation PayPal, Alipay, eBay, Alibaba, Ant Financial, Wish.com, Amazon Pay, and DHGate shall, within seven (7) calendar days of receipt of this Order:

> b.**Restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets** until further order by this Court."

And the structure of the language used in the TRO clearly indicates Mobile's probability of achieving monopoly power over the entire United States by asking "any online market platforms" to "disable and cease displaying any advertisements used by or associated with Defendants."

Defendants has alleged facts to meet the elements under attempted monopolization and this claim should not be dismissed.

## **CONCLUSION**

For the forgoing reasons, Mobile's motion to dismiss Defendants' Counts II, III, IV, V, VI, VII, and VIII of the Counterclaims should be denied. In situations where Defendants' claims are dismissed, Defendants respectfully ask the Court to grant leave for Defendants to amend Counterclaim Complaint.

Dated: February 14, 2024

/s/ *Ruoting Men*

Ruoting Men, Esq.
Tao Liu
Wei Wang
**GLACIER LAW LLP**
41 Madison Avenue, Ste. 2529
New York, NY 10010
Ruoting.men@glacier.law
Tao.liu@glacier.law
Wei.wang@glacier.law
312-270-0413
*Attorneys for Defendants*

*Local Counsel*
Richard E. Briansky (BBO#632709)
**PECKAR & ABRAMSON, P.C**.
28 State Street – Suite 1802 Boston, MA
02109
Tel: (857) 284-8155 Fax: (617)-206-1998

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of February 2024, I electronically filed Defendants' Opposition to Plaintiff's Motion to Dismiss with the United States District Court of the District of Massachusetts, via its ECF e-filing System, which will serve a true and correct copy on all counsel of record.

<u>/s/ Ruoting Men</u>

Ruoting Men