UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MOBILE PIXELS, INC.,

     Plaintiff,

v.

THE PARTNERSHIPS AND            Civil Action No. 23-cv-12587 ADB
UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A"

     Defendants.

**REPLY TO OPPOSITION TO MOTION TO DISMISS**

**(Leave to File Granted on February 27, 2024)**

Defendants' Counterlcaims are a combination of inadequately pled counts and counts that

fail to state a claim on which relief can be had as a matter of law.   Defendants incorrectly point

to materials outside of the pleadings as the full support for their invalidity count, *see* Opposition

at pg. 5, but such referrals to matters outside the pleadings is improper and is not sufficient to

survive a motion to dismiss. *See, e.g., Lukoil N. Am. LLC v. Turnersville Petroleum Inc.,* 2015

WL 5455648, at *1 (D.N.J. Sept. 16, 2015) ("On a Rule 12(b)(6) motion to dismiss, a district

court may not rely on matters extraneous to the pleading sought to be dismissed…  A motion to

dismiss a counterclaim must be decided on the face of the counterclaim.); *Larson v. Perry*, No.

19-CV-10203-IT, 2021 WL 352375, at *3 (D. Mass. Feb. 2, 2021) ("Because Larson's motion is

brought as a motion to dismiss, the court will only consider those versions of the documents

attached to Dorland's counterclaims").

1

Defendants further wrongfully base most of their state law counts on Mobile Pixels'

provision of the TRO that issued in this case to Amazon, which as set forth below is protected by

absolute litigation privilege and ***cannot*** form the basis of ***any*** liability.

More generally, Defendants' approach to the pleadings reveals the numerous defects in

their allegations. While Defendants are happy to spin a yarn concerning the alleged intent of

Mobile Pixels or the alleged weakness of Mobile Pixels' case, Defendants are unwilling and/or

unable to plead specific facts supporting those allegations in their counterclaims.  Defendants'

counterclaims II through VIII should be dismissed.

**I.      All Claims on Which Alleged Liability is Based on the Provision of the TRO to Amazon Must Be Dismissed Because of the Absolute Litigation Privilege**

As Defendants' Opposition made clear for the first time,[1] many of the counterclaims are

based entirely on Plaintiff's providing the Temporary Restraining Order ("TRO") to Amazon for

the purpose of effectuating the TRO. Specifically, with respect to the two Tortious Interference

Counts (counterclaims III and IV), Defendants' assert that:

> Mobile's submission of a false report to Amazon [the TRO] with the intent of inducing a breach and interfering [sic] the Defendants' relationship is sufficient to sustain a claim for tortious interference.

*See* Opposition at pg. 10 (treating counterclaims III and IV together).

> Amazon breached the contract by delisting Defendants' ASINs and freezing Defendants' financial accounts due to a TRO… the TRO issued by this Court was utilized by Mobile as a tool to induce a third part, Amazon, to break the contract…

*See* Opposition at pg. 12.

---

[1] That it took Defendants' Objection to the Motion to Dismiss to make clear for the first time what specific alleged acts of the Plaintiff served as the Basis of Defendants' counterclaims highlights the deficient nature of the claims pleaded.

> Mobile caused the relationship [between Defendants' and
> Amazon] to break using improper means and motive, in this case,
> through a TRO…

*See* Opposition at pg. 13. With respect to the counterclaim for commercial disparagement

(counterclaim V), Defendants state that the basis for this claim is that:

> Mobile still chose to knowingly publish a falsely secured TRO to
> Amazon…

*See* Opposition at pg. 14. And with respect to the Unjust Enrichment count (counterclaim VI),

Defendants make clear that the basis is that:

> Mobile filed a baseless request for a TRO with the specific intent
> of eliminating its competition.

*See* Opposition at pg. 15.

Each of these counterclaims (III, IV, V, and VI) rely exclusively on Mobile Pixels having

provided a TRO to Amazon, and must fail because Mobile Pixels' provision of the TRO to

Amazon is covered by the absolute litigation privilege:

> The absolute privilege protects statements made in the institution or conduct of
> litigation or in conferences and other communications preliminary to litigation.  It
> rests on the policy of permitting attorneys complete freedom of expression and
> candor in communications in their efforts to secure justice for their clients.  Thus,
> under Massachusetts law, statements by a party, counsel or witness in the institution
> of ... a judicial proceeding are absolutely privileged provided such statements relate
> to the proceeding.  This is true even if the offensive statements are uttered
> maliciously or in bad faith.  Moreover, ***the absolute litigation privilege immunizes
> the maker of the statements from any civil liability arising from those statements***.
> To rule otherwise would make the privilege valueless if an individual would then
> be subject to liability under a different theory.  Nevertheless, [t]he privilege may
> not be exploited as an opportunity to defame with impunity and unnecessary or
> unreasonable publication to parties outside the litigation can result in the loss of the
> litigation privilege.  Moreover, the privilege is available only when the challenged
> remarks are relevant or pertinent to the judicial proceedings.

*Encompass Ins. Co. of MA v. Giampa*, 522 F. Supp. 2d 300, 308–09 (D. Mass. 2007) (quotations

and citations omitted, emphasis added); *see also, e.g.*, *Visnick v. Caulfield*, 73 Mass. App. Ct.

809, 811–14, 901 N.E.2d 1261, 1263–65 (2009) (citing *Sriberg v. Raymond,* 370 Mass. 105, 108, 345 N.E.2d 882 (1976)) ("Statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding."); *Correllas v. Viveiros,* 410 Mass. 314, 319, 572 N.E.2d 7 (1991) ("Statements made in the course of a judicial proceeding which pertain to that proceeding are, of course, absolutely privileged and cannot support a claim of defamation, even if uttered with malice or in bad faith.")

As noted above, the absolute litigation privilege applies regardless of the nature of the alleged tort. *See, e.g.*, *Visnick v. Caulfield*, 73 Mass. App. Ct. 809, 811–14, 901 N.E.2d 1261, 1263–65 (2009) (finding statements made entirely in the confines of a protected forum to be protected by the defense of absolute privilege on claims based on libel and slander as well as claims based on malicious interference with advantageous business relations and wrongful procurement of breach of contract); *Doe v. Nutter, McClennen & Fish,* 41 Mass.App.Ct. 137, 140–141, 668 N.E.2d 1329 (1996) ("[T]he absolute privilege which attaches to those statements protects the maker from any civil liability based thereon.... To rule otherwise would make the privilege valueless if an individual would then be subject to liability under a different theory"). Further, "the absolute litigation privilege 'applies to statements made outside the courtroom.'" *Encompass Ins. Co. of MA v. Giampa*, 522 F. Supp. 2d 300, 309 (D. Mass. 2007) (quoting *Leavitt v. Bickerton,* 855 F. Supp. 455, 458 (D.Mass.1994).

The litigation privilege "precludes civil liability based on communications made by an "attorney in connection with judicial proceedings or contemplated litigation." *Bassichis v. Flores*, 490 Mass. 143, 189 N.E.3d 640, 642 (2022); *see also, e.g.*, *Nnodim v. U.S. Bank Tr. Ass'n as Tr. for LB-Igloo Series IV Tr.*, No. 22-CV-11125-DLC, 2023 WL 8114342, at \*4–7 (D.

Mass. Nov. 22, 2023) (applying absolute litigation privilege to statements made by a party's

attorney that "occurred solely in the context of this litigation after the plaintiff filed suit and after

[the attorney] filed a notice of appearance).

Here, there can be no doubt that the absolute litigation privilege applies.  The conduct

complained of—the provision of the TRO to Amazon—necessarily took place after the

Complaint in this matter had been filed and after the TRO had been issued, and the provision of

the TRO to Amazon was clearly "in connection with [this] judicial proceeding" (*see Bassichis*,

490 Mass. at 143), as Amazon was specifically named in the TRO as a third-party online

marketplace which Mobile Pixels may provide notice and which would then be subject to certain

terms of the TRO.  *See* TRO at ¶ 4.

Indeed, **the case law cited by Defendants** makes clear that there is a distinction between

notifying retailers of alleged infringement **before** filing suit versus notifying them in connection

with an already-filed litigation.  *See Hotaling & Co., LLC v. LY Berditchev Corp.*, No. 20-CV-

16366, 2022 WL 1134851, at *3 (D.N.J. Apr. 18, 2022) (distinguishing the case from one in

which absolute litigation privilege applied because unlike in that case, the *Hotaling* plaintiff had

submitted complaints to Amazon "*prior* to commencing the present litigation."); *Shafir v. Steele*,

431 Mass. 365, 366–67, 727 N.E.2d 1140, 1142 (2000) (the defendant acknowledged that he had

provided a draft complaint alleging fraud, extortion and malicious interference with an

advantageous contract to the plaintiff for which he had no factual basis and which he never

actually filed).

II.     **The Tortious Interference with Contractual Relations Counterclaims Should be
        Dismissed for Failure to Demonstrate Breach of a Contract or Failure to Perform
        under a Contract**

With regard to the Tortious Interference with Contractual Relations count, all of the

remaining cases cited by Defendant expressly state that the claim requires that a party actually

breach a contract or decide not to enter into a contract, neither of which is alleged in the

counterclaim.[2]

Defendants cite to the *Hotaling* case to wrongly suggest that "virtually identical

conduct… was sufficient to sustain a claim of tortious interference." *See* Opposition at pg. 11.

In addition to failing to inform the Court that the *Hotaling* case is distinguishable because the

accused statements were made outside of any litigation and thus not subject to the absolute

litigation privilege, Defendants mislead the Court by failing to note that the *Hotaling* court

dismissed the tortious interference with contractual relations claim for the separate and additional

reason that **no breach of the contract with Amazon was alleged**.  *Hotaling & Co., LLC v. LY*

*Berditchev Corp.*, No. 20-CV-16366, 2022 WL 1134851, at \*4–5 (D.N.J. Apr. 18, 2022) (noting

that the defendant had alleged only that "Amazon suspended certain listings, which is consistent

with Amazon's policy on infringement claims" and that the defendant had not "adequately

alleged that Plaintiffs' conduct resulted in the loss or breach of its contract with Amazon. It

merely claims that Plaintiffs caused 'disruption' of its contract, but does not detail the

contractual provisions that were impacted or the resulting breach or loss. Without more, LYB's

vague allegation of contract 'disruption' is insufficient.") (internal citation omitted). That Court

further noted that allegations regarding loss of revenues were not sufficient to fill in this gap

because "[l]oss of revenue resulting from suspension of [defendant's] listings may be sufficient

to plead damages resulting from [Plaintiffs'] interference, but it does not necessarily show loss or

breach of a contract") (internal quotations omitted). *Id*.

---

[2] The *Shafir* case, while reciting the language of the Second Restatement of Torts, hinged on the decision by a party to a P&S agreement on real property to repudiate the P&S, effectively breaching the P&S Agreement.  *See Shafir v. Steele*, 431 Mass. 365, 366–67, 727 N.E.2d 1140, 1142 (2000)

Furthermore, while Defendants do plead the existence of an agreement with Amazon, they do not plead any specific contractual terms. Instead, Defendants suggest that the enforcement of the TRO by Amazon represents a breach of contract or—as Defendants state in their Opposition—an (unexplained) increase in the cost of performance. *See* ECF No. 84 ¶¶ 34-41; Opposition, ECF No. 95 at 13 ("Mobile caused the relationship to break using improper means and motive, in this case, through a TRO…").

This argument is unavailing. Under the plausibility standard of *Twombly* and *Iqbal*, the pleaded facts must give rise to a plausible inference of improper conduct. Aside from the absolute litigation privileged, discussed *supra* § I, without the terms of the agreement before the court, there is no way to know what rights or responsibilities inured to the parties. The court cannot draw an inference of plausibility without some factual indication of what the rights and responsibilities of the parties were. This is well established law, even before the Supreme Court adopted the more difficult plausibility pleading standard:

> Plaintiffs are mistaken in their belief that they need no more than to allege that the facts demonstrate a breach of the contractual relationship. It is essential to state with substantial certainty the facts showing the existence of the contract **and the legal effect thereof**… The amended complaint fails to state the nature of the alleged contract with any specificity. **There is no presentation of the terms of the contract, its duration, or even when it was formed. Nor does the Amended Complaint explain what obligations were imposed on each of the parties by the alleged contract**.

*Doyle v. Hasbro*, 103 F.3d 186, 194-95 (1st Cir. 1996) (granting motion to dismiss breach of contract claim) (emphasis added); *Vieira v. First Am. Title Ins. Co.*, 668 F.Supp.2d 282, 289 (D. Mass. 2009) ("The pleading therefore must explain what obligations the alleged contract imposed on each of the parties to avoid dismissal under Rule 12(b)(6)").

Defendants argue that Mobile Pixels cannot avoid liability for wrongful conduct simply by claiming there was no breach. Defendants argue that "rendering performance under the contract impossible" is sufficient to establish liability and that "breach as such is not required but merely a failure of performance." *See* Opposition at pg. 11 (citing cases). However, Defendants have not alleged that performance under the contract became impossible. Furthermore, these cases still requires someone to fail to perform under the contract. If Amazon has the right to enforce court orders under the contract (or has the unilateral right to freeze accounts or remove listings), then there is no failure of performance because Amazon is performing under the contract as it is entitled to do so.

Defendants plead no facts that tend to even remotely show that anyone has failed to perform as they are entitled to under the contract, or even what performance is required of the parties. Dismissal therefore remains proper. *E.g., Doyle*, 103 F.3d at 194-95.

## III. Defendants Have Not Pleaded a Violation of M.G.L. c.93A or Attempted Monopolization

Defendants appear to agree that the *Noerr-Pennington* Doctrine protects Mobile Pixels from accusations under chapter 93A and the Sherman Act. *See* Opposition at pgs. 15-17. Defendants therefore shift their argument to address the *Noerr-Pennington* Doctrine, but fail to provide a sound argument.

### a. M.G.L. c.93A

As an initial matter, in the District of Massachusetts, a chapter 93A counterclaim based on the alleged filing of baseless litigation does not typically state a plausible claim for relief. *See Scholz Design, Inc., v. Liquori*, 659 F.Supp.2d 275, 277 (D. Mass. 2009).

In *Scholz*, the plaintiff moved to dismiss a counterclaims for violation of chapter 93A. The counterclaim alleged a violation of chapter 93A on the basis that the plaintiff's underlying

copyright infringement lawsuit was "baseless and entirely without merit, initiated for the sole

purpose of extracting an unfair and unreasonable settlement from [the defendants]" and that said

conduct constituted an unfair and deceptive business practice. *Scholz*, 659 F.Supp.2d at 276

(cleaned up).

The court ruled that, under Massachusetts law, a claim for relief under chapter 93A could

only be brought on the basis of a willfully filed baseless lawsuit when the purpose for the filing

of the lawsuit was motivated by a pernicious purpose collateral to winning the suit. *Scholz*, 659

F.Supp.2d at 278 (citing cases). The court observed that the lawsuit being baseless was a

"dubious proposition given that the [defendants] opted to answer the complaint in lieu of filing a

Rule 12(b)(6) motion to dismiss." *Scholz*, 659 F.Supp.2d at 278.

Here, the Defendants have opted to answer the complaint, which, like in *Scholz*, appears

to undermine their contention that Mobile Pixels' lawsuit was baseless. Defendants have also

failed to plead any facts tending to show improper purpose or motive, and thus the weight of the

pleadings tends to indicate that Mobile Pixels' lawsuit is not objectively baseless.

**b.      Attempted Monopolization**

Defendants do not contest that the only allegation made with respect to the "dangerous

likelihood that Mobile Pixels would or could achieve monopoly power" is the statement "[o]n

information and belief, there is a dangerous probability that Mobile will achieve a monopoly

power in the laptop monitor extender marketplace on the Amazon platform in the United States"

contained in the counterclaim. *See* ECF No. 84 ¶ 70; Opposition at pgs. 17-18.  No specific facts

regarding any such monopolization are presented.  This may well be because Defendants cannot

factually make such allegations.  For example, a search on Amazon for

"laptop+screen+extender" presently results in 913 offerings, while adding the Mobile Pixels

9

("mobile+pixels+laptop+screen+extender") name results in only 162 offerings, meaning there

are (just on Amazon) at least 751 alternative monitors available from sources other than Mobile

Pixels.  *See* Declaration of T. McNulty filed herewith at Exhibits A and B,

Defendants also do not allege any facts related to specific intent. Defendants state that

"Mobile filed a baseless request for a temporary restraining order (TRO) with the specific intent

of eliminating its competition." ECF No. 84 ¶ 1. However, this allegation is a legal conclusion,

not a factual one. There are no facts pleaded which show Mobile Pixels' subjective intent.

Indeed, everything Defendants complain of (e.g., Mobile Pixels seeking and getting a TRO and

then enforcing the TRO) is within the ambit of ordinary enforcement of a patent. As stated

before, and as apparent here, Defendants counterclaims are working backwards by assuming the

lawsuit is a sham without proffering factual support for this belief, and then treating perfectly

ordinary litigation activities as evidence of the sham. *See* Mot. to Dismiss, ECF No. 92 at 16.

### c. *Noerr-Pennington* Generally

The parties have briefed *Noerr-Pennington* previously. The doctrine requires the

Defendants to show that (1) the litigation is objectively baseless in the sense that no reasonable

litigant could realistically expect success on the merits. If and only if the first prong is met, the

Defendants must then show that (2) the lawsuit is an attempt to interfere with the business

relationship through the use of—as opposed to the outcome of—governmental process as an

anticompetitive weapon. *Tyco Healthcare Group LP v. Mutual Pharma. Co. Inc.*, 762 F.3d 1338

(Fed. Cir. 2014). Invoking the sham exception requires clear and convincing evidence of bad

faith. *Handgards Inc. v. Ethicon, Inc.*, 743 F.2d 1282, 1288, 223 USPQ 214, 222023 (9th Cir.

1984). *See* Motion to Dismiss, ECF No. 92 at 14-15. There is an assumption that the assertion of

a patent is made in good faith, and patentees are entitled to rely on the presumption of validity. *Tyco*, 762 F.3d at 1345-46.

Defendants base their argument that this lawsuit is a sham on the following: (1) no reasonable litigant could expect success on this patent infringement claim; and (2) Mobile Pixels did not purchase the allegedly infringing products and instead relied on visual inspection of the product pages on Amazon. *See* Opposition at pg. 16.

The first point above is a legal conclusion. *See Professional Real Estate Investors Inc. v. Columbia Pictures Indus. Inc.*, 508 U.S. 49 at 67 (Souter, J. concurrence) ("the question whether the suit is objectively baseless is purely one of law"). It thus must be supported by facts. The counterclaims contain no facts as to why no reasonable litigant could expect success on the merits. The Opposition instead seems to double down on the invalidity argument, which relies on art over which the PTO allowed the '975 patent. *See* Opposition at pgs. 5-9 (citing references not attached to or referenced in the counterclaim). *See also depra,* § III(b) (discussing issues with the art relied on by the Defendants).

The second point is not factually alleged in the counterclaim, and thus should not be considered.  See *Lukoil N. Am.,* 2015 WL 5455648, at *1 (D.N.J. Sept. 16, 2015) ("On a Rule 12(b)(6) motion to dismiss, a district court may not rely on matters extraneous to the pleading sought to be dismissed…  A motion to dismiss a counterclaim must be decided on the face of the counterclaim.); *Larson v. Perry*, 2021 WL 352375, at *3 (D. Mass. Feb. 2, 2021) ("Because Larson's motion is brought as a motion to dismiss, the court will only consider those versions of the documents attached to Dorland's counterclaims).

However, even if the Defendants had properly pleaded the second point, it would be inapposite. As Defendants are well-aware, design patents cover the **design (e.g., the**

**appearance)** of an article of manufacture. Indeed, the test for design patent infringement is based on the visual similarity between the patented design and the infringing products: In a design patent case, the test is whether an ordinary consumer, giving such attention as a purchaser usually gives, finds two designs substantially the same such that the consumer would be induced into buying the infringing product. *Columbia Sportswear NA Inc. v. Seirus Innovation Accessories Inc.*, 80 F.4th 1363, 1369 (Fed. Cir. 2023); *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871) ("if [an ordinary observer] is led to purchase forks or spoons, deceived by the **apparent resemblance** into the belief that they bear the 'cottage' design, and, therefore, are the production of the holders of the [Gorham patent]") (emphasis added).

It is entirely reasonable and proper to rely on visual inspection of a product when the test for infringement is based on appearance. The "apparent resemblance" of the products is a touchstone for design patent liability, and visual inspection is necessary in virtually all design patent cases. One does not need to purchase a product in order to see what it looks like to make a reasonable, good faith judgment of whether an ordinary consumer would confuse one design with another. *See Columbia*, 80 F.4th at 1369. It is noteworthy that Defendants do not allege that the visual representations of their products which they published on Amazon are not accurate representations of their products.[3] Therefore, it is reasonable and proper for Mobile Pixels to rely on the Defendants' own visual representations of their products to determine whether infringement exists. *Columbia*, 80 F.4th 1369 (designs that are substantially the same infringe).

---

[3] If Defendants are trying to allege that their visual representations of their products were not accurate and not a suitable basis for evaluating the similarity of designs, then Defendants may have committed fraud against various consumers who purchased their products and possibly against Amazon by publishing misrepresentations of their products.

Further, Defendants cite to no case law suggesting that there is an obligation to purchase or otherwise obtain accused products in a patent lawsuit, much less in a design patent lawsuit.

Defendants plead no relevant facts in the counterclaims and provide baseless, unsupported arguments when called out on it. There is simply no factual basis to defendants counterclaims.

## III.    Defendants do not Address Numerous Points Raised in The Motion to Dismiss

The weakness of Defendants' arguments is further evinced by the Defendants' failure to address numerous points raised in the Motion to Dismiss.

### a.    Defendants do not Address Inequitable Conduct at all

With respect to Inequitable Conduct, Defendants do not address Mobile Pixels' argument that the Affirmative Defense of Inequitable Conduct must be excised from the pleadings. *Compare* Mot. to Dismiss, ECF No. 92 at § I(a) *with* Opposition, ECF No. 95 (containing no rebuttal or response).

### b.    Defendants Invalidity Arguments Rely on Facts and Argument not Present in the Counterclaims

With respect to invalidity under 35 U.S.C. §§ 101, 102, 103, 112, Defendants acknowledge that the pleading standard for invalidity is high and that additional factual support should be pleaded. *See* Opposition at pg. 4. This appears to be a concession that dismissal is proper.[4] At any rate, in an attempt to shore up their invalidity counterclaims, Defendants reference their Opposition to the TRO ("TRO Opposition") and repeat some arguments from the TRO Opposition. However, these facts are not contained in the counterclaim and should be ignored. *See, e.g., Lukoil,* 2015 WL 5455648, at *1; *Larson v. Perry*, 2021 WL 352375, at *3.

---

[4] Defendants also state that they believe their invalidity counterclaim amounts to more than one sentence, (*see* Opposition at pg. 4), but do not identify any additional sentences.

Further, Defendants implicitly acknowledge that the TRO Opposition lacks any factual allegations regarding invalidity under Sections 101 or 112 by stating their willingness to withdraw those claims, and such withdrawal should be required.

To the extent the Court may choose to consider the Defendants' substantive argument presented in the Opposition (pgs. 5-8) with respect to Sections 102 and 103, Plaintiff notes that the art relied on by Defendants' includes the slidenjoy, Muller patent, and Han patent, all of which were considered by the Examiner and are cited on the face of Mobile Pixels' patent ('975 patent). This indicates that the U.S. Patent and Trademark Office ("PTO") considered each of the references relied on by the Defendants and allowed the '975 Patent in view of all the references cited by Defendants.  As the subject patent was duly examined and issued by the PTO, Mobile Pixels is fully entitled to rely on the presumption of validity that has long been attached to an issued patent.  35 U.S.C. § 282 ("A patent shall be presumed valid."); *see, e.g.*, *Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc.*, 796 F.2d 443, 447 (Fed. Cir. 1986) (same); *Sciele Pharma Inc. v. Lupin Ltd.*, 684 F.3d 1253, 1260 (Fed. Cir. 2012) ("there is a high burden of proof created by the necessary deference to the PTO.  This notion stems from our suggestion that the party challenging a patent in court bears the added burden of overcoming the deference that is due to a qualified government agency presumed to have done its job.  That high burden is reflected in the clear and convincing evidence burden for proving invalidity.") (internal cites and quotation marks omitted).

14

### c. Defendants Fail to Identify Any Unprivileged Parties to Whom the TRO was Disclosed

Defendants cannot and do not identify any party other than Amazon as a basis for this claim of commercial disparagement. *See* Opposition at pg. 14. As discussed above, *supra* § I, Mobile Pixels is entitled to absolute litigation privilege with respect to Amazon and other parties affected by the TRO.

### d. Defendants Contort the Boundaries of Unjust Enrichment Beyond Recognition and Without Citing any Authorities

With respect to Unjust Enrichment (counterclaim VI), Defendants appear to agree that the counterclaim plaintiff must confer a benefit upon the counterclaim defendant. *See* Opposition at pg. 15. Defendants first argue that the Court and Amazon are tools that caused Defendants to confer the revenue from at least 83 ASINs. However, Defendants do not plead that Mobile Pixels received revenues that would have gone to the Defendants. *See* Counterclaim, ECF No. 84 ¶¶ 60, 61.[5] Moreover, Defendants cite zero cases, and no authorities, for the proposition that enforcing a TRO is a basis for unjust enrichment. Given that an absolute litigation privilege exists, *supra* § 1, Defendants' argument appears baseless and meritless.[6]

---

[5] There is some inconsistency in Defendants arguments as well. In the Counterclaim Defendants allege merely "benefits" (ECF No. 84 ¶¶ 60, 61), and earlier mention an immediate benefit "in the form of the elimination of virtually all [Mobile Pixels'] competition…" *Id*. ¶ 1. Defendants appear to recharacterize their claims whenever is convenient to them.

[6] Mobile Pixels is aware of only one apparently relevant case in the First Circuit, *Metropolitan Life Ins. v. Drainville*, No. CA 07-427 ML, 2009 WL 1209473, at *5 (D.R.I. May 4, 2009) (citing a Kansas case where the court found that **violation** of a TRO constituted unjust enrichment). Mobile Pixels has not been able to identify any Massachusetts State Court cases discussing whether a TRO can serve as the basis of an unjust enrichment claim.

This is a simple situation: Mobile Pixels' received nothing from Defendants, and thus the elements of unjust enrichment are not met.

## CONCLUSION

For the reasons presented herein and in Mobile Pixels' Motion to Dismiss, Mobile Pixels requests that Defendants' Fourth Affirmative Defense be stricken and that Counts II, III, IV, V, VI, VII, and VIII of Defendants' Counterclaims be dismissed.

Dated: February 27, 2024                    Respectfully submitted,

                                             By:

                                                   */s/ Thomas P. McNulty*
                                                   Thomas P. McNulty ((BBO # 654,564)
                                                   Kevin M. Eckert (VBA 89140)
                                                   LANDO & ANASTASI, LLP
                                                   60 State Street, 23rd Floor
                                                   Boston, MA 02109
                                                   Tel:    (617) 395-7000
                                                   Fax:    (617) 395-7070
                                                   Email: tmcnulty@lalaw.com
                                                           keckert@lalaw.com

                                             *Attorneys for Plaintiff Mobile Pixels Inc.*

**CERTIFICATE OF SERVICE**

I certify that on February 27, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which automatically sends email notification of such filing to registered participants.  Any other counsel of record will receive the foregoing via e-mail in PDF format.

*/s/  Thomas P. McNulty*
Thomas P. McNulty
