UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MOBILE PIXELS, INC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 23-cv-12587-ADB |
| THE PARTNERSHIPS AND | * | |
| UNINCORPORATED ASSOCIATIONS | * | |
| IDENTIFIED ON SCHEDULE "A", | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Plaintiff Mobile Pixels, Inc. ("Mobile Pixels") alleges that The Partnerships and Unincorporated Associations Identified on Schedule "A" of its Complaint, [ECF No. 1-7], infringe upon its design patent, U.S. Patent No. D920,975 (the "D'975 Patent"), [ECF No. 1 ("Compl." or "Complaint") ¶ 6]. After the Court granted a temporary restraining order on November 21, 2023, [ECF No. 12 (the "TRO")], two groups of defendants (the "Counterclaim Plaintiffs") asserted affirmative defenses and counterclaims relating to the D'975 Patent, the Complaint and the TRO, [ECF Nos. 83, 84]. Before the Court is Mobile Pixels' motion to strike Counterclaim Plaintiffs' Fourth Affirmative Defense and to dismiss several of their counterclaims. [ECF No. 92]. For the reasons set forth below, Mobile Pixels' motion to dismiss and strike is GRANTED.

## I.      BACKGROUND

### A.      Procedural History

On October 30, 2023, Mobile Pixels filed the Complaint.  [Compl.].  On November 16, 2023, it moved for a temporary restraining order, [ECF No. 10], which the Court granted on November 21, 2023, [TRO].  The parties spent about a month litigating issues surrounding the TRO, see, e.g., [ECF Nos. 30–31, 36, 39, 44–46, 53, 57, 59, 61–63, 67–72, 80], and then Counterclaim Plaintiffs filed their answers, affirmative defenses and counterclaims.  [ECF Nos. 83, 84].

As relevant here, Counterclaim Plaintiffs' Fourth Affirmative Defense is that "[t]he [D]'975 Patent is unenforceable for inequitable conduct before the USPTO."  [ECF No. 83 (the "Counterclaim Complaint" or "CC Compl.") at 5].[1]  Counterclaim Plaintiffs also assert eight counterclaims, seven of which are at issue here: declaratory judgment of invalidity of the D'975 Patent (Counterclaim II), tortious interference with contractual relations (Counterclaim III), tortious interference with prospective advantageous business relations (Counterclaim IV), trade libel and injurious falsehood (Counterclaim V), unjust enrichment/restitution (Counterclaim VI), violation of Mass. Gen. Laws. ch. 93A (Counterclaim VII), and attempted monopolization under 15 U.S.C. § 2 (Counterclaim VIII), [id. at 12–18].

On January 17, 2024, Mobile Pixels filed their motion to strike the Fourth Affirmative Defense and to dismiss Counterclaims II–VIII.  [ECF No. 92 at 1–2].[2]  Counterclaim Plaintiffs

---

[1] The answers, affirmative defenses and counterclaims in ECF Nos. 83 and 84 are largely identical for purposes of this Order.  The Court generally cites to ECF No. 83 for simplicity.

[2] Although Mobile Pixels initially states that it is moving to dismiss Counterclaims III–VIII, [ECF No. 92 at 2], it ultimately argues that Counterclaims II–VIII should be dismissed, [id. at 5–17].

opposed on February 14, 2024, [ECF No. 95], and Mobile Pixels filed a reply on February 27,
2024, [ECF No. 98].

    **B.    Background Facts**

    The following facts are drawn from the Counterclaim Complaint, the allegations of which
are taken as true for purposes of evaluating Mobile Pixels' motion to dismiss.  See Ruivo v.
Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

    Counterclaim Plaintiffs and Mobile Pixels both sell laptop monitor extenders, [CC
Compl. ¶¶ 2–3],[3] primarily through Amazon, [id. ¶ 7].  Counterclaim Plaintiffs are "unrelated
companies that manufacture, distribute and sell consumer electronic products including laptop
monitor extenders," [id. ¶ 2], and Mobile Pixels "is a sophisticated consumer electronic company
that sells laptop monitor extender[s]," [id. ¶ 3].  Xiaoliang Yao ("Yao") is the co-founder and
CEO of Mobile Pixels.  [Id. ¶ 4].

    The parties are each other's "primary competitors," [CC Compl. ¶ 2], and both own
intellectual property relating to the products they sell, [id. ¶¶ 2, 6].  Specifically, some
Counterclaim Plaintiffs own a design patent (U.S. Patent No. D938,436) and a utility patent
(U.S. Patent No. 11,487,328),[4] and Mobile Pixels owns the D'975 patent.  [Id.].

    In general, Counterclaim Plaintiffs allege that Mobile Pixels and Yao filed the present
lawsuit and requested a TRO for the improper purpose of "gaining an unfair (and artificial)
competitive advantage" and harming Counterclaim Plaintiffs.  See, e.g., [CC Compl. ¶¶ 9–12].

---

[3] Paragraph citations for the Counterclaim Complaint facts begin on page 8 of the Counterclaim
Complaint.

[4] The Counterclaim Plaintiffs filing ECF No. 83 claim to own these patents, but the
Counterclaim Plaintiffs filing ECF No. 84 do not claim ownership over the patents.  [CC Compl.
¶ 6; ECF No. 84 ¶ 6].

Specifically, as of May 2022, both parties were marketing "and s[elling] their competing products primarily through Amazon." [Id. ¶ 7]. Despite knowing that Counterclaim Plaintiffs were doing so, Mobile Pixels never provided notice of alleged infringement and "continued to compete in the marketplace with" Counterclaim Plaintiffs for more than a year. [Id. ¶¶ 8–9].

Counterclaim Plaintiffs allege on information and belief that in approximately October 2023, Mobile Pixels and Yao began "an unlawful scheme to gain monopoly power and reduce competition through false allegations of patent infringement and an aggressive prosecution of its competitors (which were predominately foreign companies based in China)." [CC Compl. ¶ 9]. Specifically, Mobile Pixels

> knew that Amazon has a policy and practice of delisting sellers for any claim of intellectual property infringement without investigation; delisting of a product from Amazon causes the seller immediate financial harm, direct loss of revenue, profit and existing cash held on account with Amazon; and delisting would eliminate Mobile's competitors from the marketplace i.e., the Amazon platform in the U.S. market for laptop monitor extenders, and attain monopoly power.

[Id. ¶ 10]. Moreover, Counterclaim Plaintiffs allege on information and belief that Mobile Pixels "knew that the [D'975 P]atent w[as] invalid and unenforceable, and/or knew Counterclaim Plaintiffs' products did not infringe," but nevertheless "made a strategic decision based upon the immediate financial benefit to request [a] temporary restraining order." [Id. ¶ 11].

With respect to the Complaint filed by Mobile Pixels, Counterclaim Plaintiffs allege that there was no "investigation related []to the alleged infringement," no "specific facts to support specific contacts with Massachusetts" for purposes of jurisdiction, and no "information to support that Mobile's marketplace competitors were working collaboratively or collectively." [CC Compl. ¶ 13]. Rather, Mobile Pixels submitted a "generic, non-specific" set of allegations that "were copied virtually verbatim from another so-called Schedule A infringement claim" in Oakley Inc. v. The Partnerships and Unincorporated Associations Identified on Schedule A, No.

2023-cv-14388, (D. Ill.) (the "Oakley Case").  [Id. ¶ 14]; see also [ECF No. 83-2].  In addition,

Mobile Pixels filed a supporting declaration from Yao (the "Yao Affidavit") in which the facts

"were copied effectively verbatim from an affidavit filed in the Oakley Case."  [CC Compl.

¶ 15]; see also [ECF No. 83-3].  Accordingly, the Counterclaim Plaintiffs allege that the Yao

Affidavit was "not based upon personal knowledge but instead was a summary adoption of an

affidavit filed in the Oakley Case," and that "Yao knew that at least a portion of the facts

contained [in] his Affidavit were either false or intended to mislead and signed the Yao Affidavit

for the particular purpose of eliminating his competition."  [CC Compl. ¶ 16].  "Specifically, the

Yao Affidavit includes facts necessary to establish jurisdiction over his competitors many of

whom he knew or should have known never sold any products in nor 'targeted' Massachusetts."

[Id. ¶ 17].

Relying on the Complaint and the Yao Affidavit, Mobile Pixels followed the filing of the

Complaint with its request for an ex parte TRO, which the Court issued on November 21, 2023.

[CC Compl. ¶¶ 18–19].  The Court then scheduled a hearing on December 4, 2023, but Mobile

"intentionally failed to provide[] notice to any of its competitors," and instead "immediately

effectuated their true but impermissible intent to disrupt competition by providing a copy of the

TRO to Amazon."  [Id. ¶¶ 20–21]; see also [id. ¶ 23 ("Neither Mobile nor its counsel provide[d]

notice to the Counterclaim Plaintiffs of the TRO, the complaint or a hearing on the preliminary

injunction.")[5]].

Thereafter, "[o]n or about November 27, 2023, the Counterclaim Plaintiffs received

notice from Amazon that they were delisted and that accounts containing virtually all of their

---

[5] The Counterclaim Complaint contains two paragraphs numbered 23.  This citation refers to the
first paragraph 23 on page 11.

operating funds were frozen." [CC Compl. ¶ 22]. "Without cash or a market to sell product[s], the TRO essentially eliminated the operation of the Counterclaim Plaintiffs." [Id.]. In addition, "[w]ith all of the assets frozen and an inability to sell the products[,] Mobile[,] through Yao[,] attempted to extract settlement payments from its competitors including the Counterclaim Plaintiffs." [Id. ¶ 22].[6]

"On December 6, 2023, the Court held a hearing on the Preliminary Injunction and through a bond order dated December 8, 2023, the Court effectively dissolved the TRO." [CC Compl. ¶ 23].[7] "On or about December 15, 2023, Amazon reinstated the Counterclaim Plaintiffs." [Id. ¶ 24].

## II. Motion to Strike

Mobile Pixels first moves to strike Counterclaim Plaintiffs' Fourth Affirmative Defense, [ECF No. 92 at 4–5], which states that "[t]he [D]'975 Patent is unenforceable for inequitable conduct before the USPTO." [CC Compl. at 5].

Federal Rule of Civil Procedure 12(f) provides that courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Courts generally disfavor motions to strike affirmative defenses, Bio-Vita, Ltd. v. Rausch, 759 F. Supp. 33, 39 (D. Mass. 1991), and grant them only when a plaintiff has established that it is "beyond cavil that the defendant[] could not prevail on them[,]" Honeywell Consumer Prods. v. Windmere Corp., 993 F. Supp. 22, 24 (D. Mass. 1998) (quoting Coolidge v. Judith Gap Lumber Co., 808 F. Supp. 889, 893 (D. Me. 1992)) (first alteration in original). Even

---

[6] The Counterclaim Complaint contains two paragraphs numbered 22. This citation refers to the paragraph 22 on pages 10–11.

[7] The Counterclaim Complaint contains two paragraphs numbered 23. This citation refers to the second paragraph 23 on page 11.

then, such motions are "rarely granted absent a showing of prejudice to the moving party."

Zurich Am. Ins. Co. v. Watts Regulator Co., 796 F. Supp. 2d 240, 246 (D. Mass. 2011) (quoting

Hayes v. McGee, No. 10-cv-40095, 2011 WL 39341, at *2 (D. Mass. Jan. 6, 2011)).

That said, an inequitable conduct defense must satisfy the requirements for alleging fraud

set forth in Federal Rule of Civil Procedure 9(b). Exergen Corp. v. Wal-Mart Stores, Inc., 575

F.3d 1312, 1326 (Fed. Cir. 2009). In determining "whether inequitable conduct has been

pleaded with particularity under Rule 9(b)," the law of the Federal Circuit applies. Id. "The

[Federal Circuit] [has] tightened the inequitable conduct [pleading] standard to ensure that the

defense is sustained only in egregious circumstances and to discourage parties from using it as a

mere litigation tactic in garden-variety cases." PetEdge, Inc. v. Fortress Secure Sols., LLC, No.

15-cv-11988, 2016 WL 407065, at *3 (D. Mass. Feb. 2, 2016) (quoting Lexington Luminance

LLC v. Osram Sylvania Inc., 972 F. Supp. 2d 88, 91 (D. Mass. 2013)) (alterations in original).

> Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances
> constituting fraud or mistake shall be stated with particularity." "[I]nequitable
> conduct, while a broader concept than fraud, must be pled with particularity" under
> Rule 9(b). A pleading that simply avers the substantive elements of inequitable
> conduct, without setting forth the particularized factual bases for the allegation,
> does not satisfy Rule 9(b).

Exergen, 575 F.3d at 1326–27 (alterations in original) (internal citations omitted) (quoting Rule

9(b)). Thus, "in pleading inequitable conduct in patent cases, Rule 9(b) requires identification of

the specific who, what, when, where, and how of the material misrepresentation or omission

committed before the PTO." Id. at 1327.

Here, Mobile Pixels merely asserts that the "[t]he [D]'975 Patent is unenforceable for

inequitable conduct before the USPTO." [CC Compl. at 5]. This assertion fails to meet the

particularity requirements of Rule 9(b) and Exergen. Specifically, Defendants have failed to

identify any of the who, what, when, where, and how of Mobile Pixel's purported inequitable

conduct.  See Exergen, 575 F.3d at 1327.  For these reasons, Mobile Pixels' motion to strike the Defendants' Fourth Affirmative Defense is granted.

**III.    Motion to Dismiss**

    **A.    Legal Standard**

On a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff-in-counterclaim's theory, and draw all reasonable inferences from those facts in favor of the plaintiff-in-counterclaim.  See U.S. ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).  While detailed factual allegations are not required, a counterclaim complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and it must contain "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory," Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005) (internal quotations omitted)).  The facts alleged must be sufficient to "state a claim to relief that is plausible on its face." A.G. ex rel. Maddox, 732 F.3d at 80 (quoting Twombly, 550 U.S. at 570).

    **B.    Discussion**

        1.    <u>Counterclaim II</u>

Counterclaim Plaintiffs assert in Counterclaim II that "[t]he claims of the [D]'975 Patent are invalid for failure to comply with the statutory requirements of one or more of the provisions in Title 35 of the United States Code, including without limitation §§ 101, 102, 103, and/or 112." [CC Compl. ¶ 30].  They do not plead any further facts explaining why the [D]'975 Patent is invalid.  See generally [CC Compl.].

Mobile Pixels argues that "[t]his simple 'pleading the statute' has repeatedly been held to fail to state a claim."  [ECF No. 92 at 6 (quoting SCVNGR, Inc. v. eCharge Licensing, LLC, No. 13-cv-12418, 2014 WL 4804738, at *4 (D. Mass. Sept. 25, 2014))].  Counterclaim Plaintiffs apparently acknowledge this pleading failure, and state, among other things, that they "are willing to withdraw claims of invalidity under Rule 101 and Rule 112 pending the completion of discovery," but "remain confident that further investigation may reveal grounds for invalidation of Mobile's Asserted Patent, particularly regarding the drawing being indefinite[, and t]herefore [they] intend to amend the [Counterclaim] Complaint accordingly at the appropriate juncture." [ECF No. 95 at 5].  In addition, Counterclaim Plaintiffs argue that invalidity "is evident from the docket [and] that Defendants extensively argued these points in their motion to vacate the [TRO] (Dkt. 39)," [id.], and they then proceed to re-state much of their analysis from that previous filing, [id. at 5–9].  None of that analysis, though, is included or referenced in any way in the Counterclaim Complaint, and thus the Court does not consider it here.  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (observing in Rule 12(b)(6) context that "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is [ordinarily] forbidden, unless the proceeding is properly converted into one for summary judgment under Rule 56").  Accordingly, the Counterclaim Complaint fails to state a claim for invalidity, and thus Counterclaim II is dismissed without prejudice.

### 2.    Counterclaims III–VI

Counterclaims III-VI allege the following: tortious interference with contractual relations (Counterclaim III), tortious interference with prospective advantageous business relations (Counterclaim IV), trade libel and injurious falsehood (Counterclaim V), and unjust enrichment/restitution (Count VI).  [CC Compl. ¶¶ 34–61].  Mobile Pixels argues that Counterclaim Plaintiffs' opposition to the motion to dismiss "ma[kes] clear for the first time"

that Counterclaims III-VI "are based entirely on [Mobile Pixels'] providing the . . . TRO . . . to Amazon for the purpose of effectuating the TRO," [ECF No. 98 at 2], which is conduct that is "covered by the absolute litigation privilege," [id. at 3].

In Massachusetts, "statements by a party, counsel or witness in the institution of, or during the course of, a judicial proceeding are absolutely privileged provided such statements relate to that proceeding." Sriberg v. Raymond, 345 N.E.2d 882, 883 (Mass. 1976). "The privilege applies regardless of malice, bad faith, or any nefarious motives . . . so long as the conduct complained of has some relation to the litigation." Bassichis v. Flores, 189 N.E.3d 640, 646 (Mass. 2022) (quoting Anenson, Absolute Immunity From Civil Liability: Lessons for Litigation Lawyers, 31 Pepp. L. Rev. 915, 918 (2004)). Moreover, "it is well established that '[t]he privilege applies not only to defamation claims brought against [an] attorney, but to civil liability generally.'" Id. at 647 (quoting Bartle v. Berry, 953 N.E.2d 243, 249 (Mass. App. Ct. 2011)); see also id. at 651–52 ("we see no reason to distinguish between communications made during the litigation process and conduct occurring during the litigation process" because "[t]he acts of preparing and advancing a litigation strategy are as integral to the duties of a lawyer as is advocating in the court room[, and t]he strategic decisions a lawyer makes in an effort to serve his or her client warrant protection from civil liability, regardless of whether those decisions require the lawyer to speak or to act on the client's behalf") (internal citation and quotations omitted); Trahan v. Pelczar, 194 N.E.3d 704 (Table), at *3 (Mass. App. Ct. 2022) (counterclaims predicated on "positions taken by the plaintiff, through her counsel, at various points in this litigation" were "statements that are absolutely protected by the privilege.");[8] Renzulli v.

---

[8] With respect to the interference with contractual relations claim in Trahan, the court there held that "even assuming that the litigation privilege would not foreclose relief[, t]he 'means' of

Sullivan, No. 22 MISC 000564, 2024 WL 1903573, at *10 (Mass. Land Ct. Apr. 26, 2024) (finding that "the litigation privilege protect[ed]" a party and her lawyer "from civil liability arising from their actions and statements made leading up to and as part of the motion for preliminary injunction," including "statements made in the affidavits or in the written or oral arguments").  Whether the litigation privilege applies is determined "on a case-by-case basis, after a fact-specific analysis, with a proper consideration of the balance between a plaintiff's right to seek legal redress for injuries suffered and the public policy supporting the application of such a strong protection from the burdens of litigation."  Bassichis, 189 N.E.3d at 649 (internal quotations and citation omitted).

The Court agrees with Mobile Pixels that Counterclaims III-VI rely on conduct that is at the core of this litigation, namely the filing of the infringement Complaint and providing the TRO issued by this Court to Amazon, which is protected by litigation privilege.  See, e.g., Bassichis, 189 N.E.3d at 646–49.  First, for Counterclaim III, Counterclaim Plaintiffs allege that Mobile Pixels "knowingly and intentionally asserted materially false allegations of patent infringement against Counterclaim Plaintiffs in order to have Counterclaim Plaintiffs' listing removed before the upcoming Christmas season and eliminate Counterclaim Plaintiffs' lawful competition."  [CC Compl. ¶ 37].  Similarly, for Counterclaim IV, they allege that Mobile Pixels "intentionally and knowingly made fraudulent assertions of patent infringement, which ultimately caused Amazon to remove Counterclaim Plaintiffs' listing, thus denying the future and ongoing business relationship between Counterclaim Plaintiffs [and] Amazon."  [Id. ¶ 46].  Moreover, in their opposition to the present motion, Counterclaim Plaintiffs specify that Mobile

_____

interference alleged -- the filing of motions to secure . . . money the plaintiff believed she was owed -- was not improper and, indeed, was ultimately successful."  194 N.E.3d 704, at *3.  The same can be said for the TRO here.

Pixels "is alleged to have falsely submitted complaints of infringement to Amazon knowing that these complaints would result in direct interference with its relationship with Amazon, causing a freezing of the account and a suspension of the use of the platform," and relatedly argue that "[t]o exploit Amazon's IP protection system, Mobile and its attorneys, without conducting any type of investigation, filed a Complaint containing nonspecific, formulaic allegations."  [ECF No. 95 at 11–12].

Second, for Counterclaim V, Counterclaim Plaintiffs allege that Mobile Pixels "published and distributed to Counterclaim Plaintiffs' existing customers literature containing willful, false statements concerning [the] [D]'975 Patent infringement" and "has published and distributed to Counterclaim Plaintiffs' existing customers literature containing willful, false statements tending to denigrate Plaintiff and the quality and authenticity of Counterclaim Plaintiffs' products."  [CC Compl. ¶¶ 54–55].  They do not identify any specific statements in the Counterclaim Complaint, see [id. ¶¶ 53–59], but in their argument in opposition to the present motion, they state that Mobile Pixels "chose to knowingly publish a falsely secured TRO to Amazon (party other than Defendants), alleging Defendants' different[ly] designed product infringed," [ECF No. 95 at 14].

Finally, for Counterclaim VI, Counterclaim Plaintiffs allege that Mobile Pixels "unjustly received benefits at Counterclaim Plaintiffs' expense through their wrongful conduct including its interference with Counterclaim Plaintiffs' business relationship with Amazon."  [CC Compl. ¶ 61].  In their opposition to the present motion, they further argue that Mobile Pixels, "[w]ith the TRO, . . . received an immediate benefit in the form of the elimination of virtually all of its competition and then attempted to extract money from each of its competi[tors]."  [ECF No. 95 at 15].

Accordingly, as the conduct alleged in support of Counterclaims III–VI is protected by the litigation privilege, those Counterclaims are dismissed without prejudice.

        3.    <u>Counterclaim VII: Violation of Mass. Gen. Laws Ch. 93A</u>

Counterclaim VII alleges a violation of Mass. Gen. Laws ch. 93A, §§ 2 and 11.  [CC Compl. ¶¶ 62–65].  In particular, Counterclaim Plaintiffs allege that Mobile Pixels

> [a]ttempt[ed] to enforce a patent in bad faith; [fil[ed] a baseless lawsuit and request[ed] injunctive relief (in spite of the evidence) for an anti-competitive purpose and for the purpose of impermissibly interfering with Counterclaim Plaintiffs' business relations; [s]pecifically target[ed] its competition with an ex parte TRO in an effort to eliminate competition; [and a]ttempt[ed] to extract a settlement payment solely to allow the Counterclaim Plaintiffs to engage in business.

[CC Compl. ¶ 64].

Chapter 93A creates a private cause of action against those who engage in "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."  Mass. Gen. Laws ch. 93A, § 2(a).  Section 11 allows a plaintiff to seek damages or injunctive relief against a defendant who has engaged in unfair or deceptive acts in violation of § 2, and requires a plaintiff to

> establish (1) that the defendant engaged in an unfair method of competition or committed an unfair or deceptive act or practice, as defined by G. L. c. 93A, § 2, or the regulations promulgated thereunder; (2) a loss of money or property suffered as a result; and (3) a causal connection between the loss suffered and the defendant's unfair or deceptive method, act, or practice.

<u>Auto Flat Car Crushers, Inc. v. Hanover Ins. Co.</u>, 17 N.E.3d 1066, 1074–75 (Mass. 2014).

As relevant here, "in limited situations, '[a] party may bring a claim under [Chapter] 93A against another party which willfully filed a baseless lawsuit.'"  <u>Scholz Design, Inc. v. Luquori</u>, 659 F. Supp. 2d 275, 278 (D. Mass. 2009) (quoting <u>George Hyman Constr. Co. v. Gateman</u>, 16 F. Supp. 2d 129, 162 (D. Mass. 1998)).  "For such a chapter 93A claim to survive, however, the filing of the 'baseless' lawsuit must have been motivated by a 'pernicious purpose collateral to

winning the suit.'"  Id. (quoting Quaker State Oil Refining Corp. v. Garrity Oil Co., 884 F.2d 1510, 1514 (1st Cir. 1989)).

That said, Mobile Pixels argues that their alleged conduct, namely filing the present Complaint and obtaining a TRO, see [ECF No. 95 at 16], is protected by the Noerr-Pennington doctrine, which grants a plaintiff "immunity from allegations of unfair competition when bringing a lawsuit unless that lawsuit is a 'sham,'" [ECF No. 92 at 13 (quoting Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60–61 (1993) (hereinafter, "PRE"))].

The Noerr-Pennington doctrine, which arose in antitrust cases under the Sherman Act, holds that "[t]hose who petition government for redress are generally immune from antitrust liability." PRE, 508 U.S. at 56.  Noerr-Pennington immunity extends to "petitioning" activities before the courts (i.e., litigation).  See Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).  There are exceptions to Noerr-Pennington immunity, however, including when a defendant engages in sham litigation.  See Nobelpharma AB v. Implant Innovations, Inc., 141 F.3d 1059, 1071 (Fed. Cir. 1998).[9]

---

[9] The parties do not appear to dispute that Noerr-Pennington immunity bars a 93A claim unless Counterclaim Plaintiffs adequately plead sham litigation.  See [ECF No. 92 at 12–16; ECF No. 95 at 15–16].  The First Circuit has not decided whether the Noerr-Pennington doctrine is applicable to state law claims as a matter of federal law.  See Davric Me. Corp. v. Rancourt, 216 F.3d 143, 148 n.7 (1st Cir. 2000).  The majority of circuits, however, have recognized that Noerr-Pennington emanated, at least in part, from First Amendment concerns and therefore can apply to certain state law claims as well as to federal claims.  See, e.g., Coll v. First Am. Title Ins. Co., 642 F.3d 876, 895 (10th Cir. 2011) ("[T]he Noerr-Pennington doctrine is based upon the First Amendment, which applies to [the states] through the Fourteenth Amendment. . . .").  See also VIBO Corp. v. Conway, 669 F.3d 675, 683 (6th Cir. 2012) ("Where private actors petition the government for action that would violate antitrust law, the Petition Clause [of the First Amendment] immunizes the actors from litigation in connection with their petitioning."); Kottle v. Nw. Kidney Ctrs., 146 F.3d 1056, 1059 (9th Cir. 1998) (noting that the Noerr-Pennington doctrine "sweeps broadly and is implicated by both state and federal antitrust claims that allege anticompetitive activity in the form of lobbying or advocacy before any branch of either federal or state government"); John J. Miles, Health Care and Antitrust Law, § 7:8 n.7 (2017) (collecting

In order to bring a sham litigation claim, a plaintiff must plausibly plead that the litigation was:

> (1) "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits"; and (2) subjectively motivated by a desire to "interfere <u>directly</u> with the business relationships of a competitor, through the use of the governmental <u>process</u>—as opposed to the <u>outcome</u> of that process—as an anticompetitive weapon."

<u>In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.</u>, No. 14-md-02503, 2015 WL 5458570, at *11 (D. Mass. Sept. 16, 2015) (quoting <u>PRE</u>, 508 U.S. at 60–61). "Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." <u>PRE</u>, 508 U.S. at 60.

In light of the above, the key question at issue for purposes of both Chapter 93A liability and the issue of whether Mobile Pixels is immune under the <u>Noerr-Pennington</u> doctrine is whether Mobile Pixels' infringement Complaint is baseless. <u>See PRE</u>, 508 U.S. at 60–61; <u>Scholz Design</u>, 659 F. Supp. 2d at 278. Counterclaim Plaintiffs argue that Mobile Pixel's Complaint is a sham (or in other words, baseless) because "[n]o reasonable litigant could expect success on this patent infringement claim," [ECF No. 95 at 16]. They specifically allege on information and belief that, for example, "neither Mobile nor its counsel conducted an investigation related [to] the alleged infringement," [CC Compl. ¶ 13], and instead based their claims on "generic, non-specific formulaic allegations . . . copied virtually verbatim from another" case, [<u>id.</u> ¶ 14].

---

cases). Further, many states have actually adopted the <u>Noerr-Pennington</u> doctrine and applied it to certain state-law claims. <u>See Coll</u>, 642 F.3d at 895–96 (noting that "many other states have adopted and apply the <u>Noerr–Pennington</u> doctrine to state antitrust claims, as well as other state-law claims," collecting cases, and anticipating that the <u>Noerr-Pennington</u> doctrine would be applied to the New Mexico Antitrust Act); <u>Apple, Inc. v. Motorola Mobility, Inc.</u>, 886 F. Supp. 2d 1061, 1077 (W.D. Wis. 2012) (applying <u>Noerr-Pennington</u> immunity to bar state-law unfair competition claim); <u>Bayou Fleet, Inc. v. Alexander</u>, 26 F. Supp. 2d 894, 897 (E.D. La. 1998) (dismissing claim under Louisiana Unfair Trade Practices Act as barred by <u>Noerr-Pennington</u>). Accordingly, as both parties have already done, albeit without explicitly addressing the issue, the Court applies the <u>Noerr-Pennington</u> doctrine to the state law claims in this case.

Moreover, Counterclaim Plaintiffs argue that Mobile Pixels "did not explain why Mobile who is represented by experience[d] lawyers, decided to sue multiple defendants selling different designed products in one case," [ECF No. 95 at 16 (citing CC Compl. at 7 n.3)], "and why when suing Defendants for patent infringement, Mobile did not even purchase the accused products from the Defendants, just accused Defendants [of] infringement based on visual inspection," [id. (citing ECF No. 11 ¶ 10) (emphasis omitted)].

As an initial matter, even assuming the truth of the allegation that Mobile Pixels' counsel copied from other complaints and affidavits in prosecuting this case, see, e.g., [CC Compl. ¶¶ 13–15], or filed the case in an improper manner, see [id. at 7 n.3], those issues go to whether counsel met their ethical obligations in filing suit and/or did so in a procedurally correct manner, cf. Bassichis, 189 N.E.3d at 648 ("[T]here are remedies other than a cause of action for damages that can be imposed to discourage and sanction attorney misconduct." (internal citation and quotation omitted)).  The question of whether the infringement allegations in the Complaint are objectively baseless, however, is a separate issue.

The crux of Counterclaim Plaintiffs argument as to the baselessness of the infringement claims is that "Mobile did not even purchase the accused products from the [Counterclaim Plaintiffs], [and] just accused [them of] infringement based on visual inspection."  [ECF No. 95 at 16 (citing ECF No. 11 ¶ 10) (emphasis omitted)].  Even if the failure to purchase the products was sufficient to show that the Complaint was baseless, which the Court is doubtful that it is, see Egyptian Goddess, Inc. v. Swisa, Inc., 543 F.3d 665, 682 (Fed. Cir. 2008) (the test for design patent infringement is whether "an ordinary observer, taking into account the prior art, would believe the accused design to be the same as the patented design"), the allegation regarding visual inspection is not included in the Counterclaim Complaint.  See generally [CC Compl.].

Moreover, the Counterclaim Complaint fails to provide any non-infringement analysis that would allow the Court to analyze whether it is plausible that the infringement allegations are baseless.  See generally, [id.].  Accordingly, the Court finds that Counterclaim Plaintiffs have not pled sufficient facts to support a Chapter 93A violation and/or to overcome Mobile Pixels' immunity under the Noerr-Pennington doctrine, see PRE, 508 U.S. at 60–61, and thus Counterclaim VII is dismissed without prejudice.

### 4.   Counterclaim VIII: Attempted Monopolization Under 15 U.S.C. § 2

In Counterclaim VIII, Counterclaim Plaintiffs allege that "Mobile made a strategic decision based upon the immediate financial benefit to file sham litigation and request [a] temporary restraining order with no reasonable basis for doing so and with no purpose than to unfairly eliminate competition and obtain a monopoly," in violation of 15 U.S.C. § 2.  [CC Compl. ¶¶ 66–71].  Because Counterclaim Plaintiffs allege a sham litigation, as with the Chapter 93A claim, see supra, they must overcome the immunity afforded under the Noerr-Pennington doctrine.  See PRE, 508 U.S. at 52, 62 (affirming summary judgment on antitrust counterclaim under 15 U.S.C. § 2 and finding that "[u]nder the objective prong of the sham exception, . . . [purported] sham litigation must constitute the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure favorable relief").  Thus, for the same reasons that Counterclaim Plaintiffs have failed to plausibly allege that Mobile Pixels' infringement claims are baseless for purposes of Chapter 93A, see supra, they have failed to do so for purposes of their monopolization claim, and thus Counterclaim VIII is also dismissed without prejudice.[10]

---

[10] With respect to both the Chapter 93A claim and the attempted monopolization claim, the Court notes that Counterclaim Plaintiffs' decision to answer the Complaint, [ECF Nos. 83, 84], undermines the likelihood of a finding that the infringement allegations in the Complaint are objectively baseless.  See Scholz Design, 659 F. Supp. 2d at 278 ("[E]ven assuming that Plaintiff's suit is somehow baseless—a dubious proposition given that [the defendant] opted to

## IV.      CONCLUSION

Accordingly, Mobile Pixels' motion to dismiss and strike, [ECF No. 92], is <u>GRANTED</u>. Counterclaim Plaintiffs' Fourth Affirmative Defense is stricken, and Counterclaims II–VIII are dismissed without prejudice.

**SO ORDERED.**

July 18, 2024                                          */s/ Allison D. Burroughs*
                                                      ALLISON D. BURROUGHS
                                                      U.S. DISTRICT JUDGE

---

answer the complaint in lieu of filing a Rule 12(b)(6) motion to dismiss—there are no specific allegations that [the p]laintiff was motivated by a pernicious purpose.").